

*4752*

David A. DiMarzio
Clerk of Court

**UNITED STATES DISTRICT COURT**
**District of Rhode Island**

Paulette J. Dube
Chief Deputy Clerk

June 5, 2014

*14Cr2354*

USDC for Northern Dist. of IL
Attn: Thomas G. Bruton
219 South Dearborn Street
Chicago, IL 60604

**JUDGE DURKIN**

　　　　*Re: USDC-RID #CR11-169S/USDC-NDIL #CR14-235　　　US v. Gary Winner*

To Whom It May Concern:　　　　　　　　　　　MAGISTRATE JUDGE COLE

　　　　Enclosed please find certified copies of the relevant documents from our file and a certified copy of the docket sheet. Please forward copies of these materials onto your Probation office for their records and continued supervision of Defendant Winner.

　　　　Should you have any questions, please contact me at the above reference number. Thank you in advance for your attention to this matter.

Very Truly Yours,

/s/ Ryan H. Jackson

_____
Ryan Jackson
Deputy Clerk

rj/
encl.

**FILED**

JUN X 9 2014
6-9-14
THOMAS G. BRUTON

CLOSED

# U.S. District Court
## District of Rhode Island (Providence)
### CRIMINAL DOCKET FOR CASE #: 1:11-cr-00169-S-DLM All Defendants
### Internal Use Only

14cr235-1

Case title: USA v. Winner

Date Filed: 09/29/2011
Date Terminated: 02/17/2012

---

Assigned to: Chief Judge William
E. Smith
Referred to: Magistrate Judge
David L. Martin

JUDGE DURKIN

MAGISTRATE JUDGE COLE

## Defendant (1)

**Gary Winner**
*TERMINATED: 02/17/2012*

represented by **Sara E. Silva**
Collora LLP
600 Atlantic Avenue
Boston, MA 02210
617-371-1000
Fax: 617-371-1037
Email: ssilva@collorallp.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**William A. Haddad**
Beck Reed Riden LLP
155 Federal Street
Suite 1302
Boston, MA 02110
617-500-8660
Fax: 617-500-8665
Email: whaddad@beckreed.com
*ATTORNEY TO BE NOTICED*
Designation: Retained

**William H. Kettlewell**



Attest to
True Copy
DAVID A. DIMARZIO
By_____ Deputy Clerk

Collora LLP
600 Atlantic Avenue
Boston, MA 02210
617-371-1000
Fax: 617-371-1037
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| | Deft is sentenced to a term of 37 months incarceration as to counts I, II and IV and 36 months as to count III to run concurrently; 3 years of supervised release as to counts I, II, and IV and 1 year as t count III to run concurrently with special conditions; $400.00 special assessment fee, $12,500.00 fine, and restitution in the amount $2,210,152.00 ($70,358.00 joint and several with Sonja Ascoli - CR 12-12). |
| HEALTH CARE FRAUD all in Violation of 18 USC 1347 (1-2) | |
| INTRODUCTION OF ADULTERATED AND MISBRANDED MEDICAL DEVICE INTO INTERSTATE COMMERCE in Violation of 21 USC 331(a) & 333(a)(2) (3) | Deft is sentenced to a term of 37 months incarceration as to counts I, II and IV and 36 months as to count III to run concurrently; 3 years of supervised release as to counts I, II, and IV and 1 year as t count III to run concurrently with special conditions; $400.00 special assessment fee, $12,500.00 fine, and restitution in the amount $2,210,152.00 ($70,358.00 joint and several with Sonja Ascoli - CR 12-12). |
| MONEY LAUNDERING in | Deft is sentenced to a term of 37 months incarceration as to counts I, II and IV and 36 months as to count III to run concurrently; 3 years of supervised release as to counts I, II, and IV and 1 year as t |

Violation of 18 USC 1957
(4)

count III to run concurrently with
special conditions; $400.00
special assessment fee,
$12,500.00 fine, and restitution in
the amount $2,210,152.00
($70,358.00 joint and several with
Sonja Ascoli - CR 12-12).

**Highest Offense Level
(Opening)**
Felony

**Terminated Counts**

**Disposition**

None

**Highest Offense Level
(Terminated)**
None

**Complaints**

**Disposition**

None

---

**Plaintiff**

**USA**

represented by **Dulce Donovan**
U.S. Attorney's Office
Fleet Center
50 Kennedy Plaza
8th Floor
Providence, RI 02903
709-5000
Fax: 709-5001
Email: dulce.donovan@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Michael P. Iannotti**
U.S. ATTORNEY OFFICE
Fleet Center
50 Kennedy Plaza
8th Floor

Providence, RI 02903
709-5063
Fax: 709-5017
Email:
michael.iannotti@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2011 | | NOTICE OF HEARING DEFENDANT REQUEST as to Gary Winner: Change of Plea Hearing *scheduled for 10/18/2011 at 11:00 AM in Courtroom 2* before Judge William E. Smith.(Jackson, Ryan) (Entered: 09/29/2011) |
| 09/29/2011 | 1 | INFORMATION as to Gary Winner (1) count(s) 1-2, 3, 4. (Attachments: # 1 Criminal Cover Sheet) (Saucier, Martha) (Entered: 09/29/2011) |
| 09/29/2011 | | NOTICE OF FORFEITURE ALLEGATION by USA as to Gary Winner re 1 Information - Felony (Saucier, Martha) (Entered: 09/29/2011) |
| 09/29/2011 | 2 | PLEA AGREEMENT as to Gary Winner (Saucier, Martha) (Entered: 09/29/2011) |
| 09/29/2011 | 3 | NOTICE OF ATTORNEY APPEARANCE: William A. Haddad appearing for Gary Winner (Haddad, William) (Entered: 09/29/2011) |
| 09/29/2011 | 4 | MOTION for William H. Kettlewell to Appear Pro Hac Vice by Gary Winner. (Haddad, William) (Entered: 09/29/2011) |
| 09/29/2011 | 5 | MOTION for Sara E. Silva to Appear Pro Hac Vice by Gary Winner. (Haddad, William) (Entered: 09/29/2011) |
| 09/30/2011 | 🔒 | Summons Issued in case as to Gary Winner Arraignment set for 10/18/2011 10:00 AM in Courtroom B before Magistrate Judge David L. Martin. (Saucier, Martha) (Entered: 09/30/2011) |
| 09/30/2011 | | **NOTICE OF HEARING DEFENDANT REQUEST** as to Gary Winner Arraignment set for **10/18/2011 10:00 AM** in Courtroom B before Magistrate Judge David L. Martin.(Saucier, Martha) (Entered: 09/30/2011) |
| 10/03/2011 | 🔒 6 | APPLICATION FOR ADMISSION PRO HAC VICE by |

| | | | |
|---|---|---|---|
| | | | Gary Winner as to Gary Winner <u>5</u> MOTION for Sara E. Silva to Appear Pro Hac Vice filed by Gary Winner (Urizandi, Nisshy) Modified on 10/7/2011 to reflect that this document was filed by defense counsel and **not** by USA (Urizandi, Nisshy). (Entered: 10/07/2011) |
| 10/03/2011 | 🔒 | <u>7</u> | APPLICATION FOR ADMISSION PRO HAC VICE by Gary Winner <u>4</u> MOTION for William H. Kettlewell to Appear Pro Hac Vice filed by Gary Winner (Urizandi, Nisshy) (Entered: 10/07/2011) |
| 10/07/2011 | | | **HEARING CANCELLED** re Notice of Hearing Defendant Request, Notice of Hearing Defendant Request as to Gary Winner: Arraignment set for 10/18/2011 10:00 AM in Courtroom B before Magistrate Judge David L. Martin HAS BEEN CANCELLED.(Saucier, Martha) (Entered: 10/07/2011) |
| 10/07/2011 | 🔒 | | Summons Issued in case as to Gary Winner Arraignment set for 11/17/2011 02:00 PM in Courtroom B before Magistrate Judge David L. Martin. (Saucier, Martha) (Entered: 10/07/2011) |
| 10/07/2011 | | | **AMENDED NOTICE OF HEARING DEFENDANT REQUEST** as to Gary Winner Arraignment **HAS BEEN RESCHEDULED FOR <u>11/17/2011 02:00 PM</u>** in Courtroom B before Magistrate Judge David L. Martin. (Saucier, Martha) (Entered: 10/07/2011) |
| 10/07/2011 | | | NOTICE OF HEARING DEFENDANT REQUEST as to Gary Winner: Change of Plea Hearing *RE-SCHEDULED for <u>11/17/2011 at 3:00 PM</u> in Courtroom 2* before Judge William E. Smith.(Jackson, Ryan) (Entered: 10/07/2011) |
| 10/11/2011 | 🔒 🔒 | <u>8</u> | Summons Returned Unexecuted in case as to Gary Winner (Urizandi, Nisshy) (Entered: 10/12/2011) |
| 10/18/2011 | | | TEXT ORDER granting <u>4</u> Motion to Appear Pro Hac Vice of William H. Kettlewell as to Gary Winner (1); granting <u>5</u> Motion to Appear Pro Hac Vice of Sara E. Silva as to Gary Winner (1). So Ordered by Judge William E. Smith on 10/18/11.(Jackson, Ryan) (Entered: 10/18/2011) |
| 11/17/2011 | | | Minute Entry for proceedings held before Magistrate Judge David L. Martin:Arraignment as to Gary Winner |

| | | |
|---|---|---|
| | | (1) Count 1-2,3,4 held on 11/17/2011, Bond Hearing as to Gary Winner held on 11/17/2011. Dulce Donovan for the government; William Haddad and William Kettlewell for the defendant; Brian Pletcher for probation. Court questions defendant; Court informs defendant of pending charges; Government outlines facts related to the charges in the information; Court informs defendant of his rights; Defendant waives indictment and the Court accepts the waiver; Court enters a plea of not guilty as to all counts on behalf of the defendant; Government requests bail; Defendant addresses the Court regarding travel; Court orders defendant released on $10,000.00 unsecured bond with additional conditions.(Courtroom B at 2:00.) (Saucier, Martha) (Entered: 11/17/2011) |
| 11/17/2011 | 9 | WAIVER OF INDICTMENT by Gary Winner; accepted by Magistrate Judge Martin. (Saucier, Martha) (Entered: 11/17/2011) |
| 11/17/2011 | 10 | Appearance Bond Entered as to Gary Winner in amount of $ $10,000.00, Unsecured Bond with additional conditions. So Ordered by Magistrate Judge David L. Martin on 11/17/11. (Saucier, Martha) (Main Document 10 replaced on 11/17/2011) (Jackson, Ryan). (Entered: 11/17/2011) |
| 11/17/2011 | 11 | ORDER Setting Conditions of Release as to Gary Winner (1) $10,000.00 Unsecured Bond with additional conditions. So Ordered by Magistrate Judge David L. Martin on 11/17/11. (Saucier, Martha) (Entered: 11/17/2011) |
| 11/17/2011 | 12 | (Court only) Receipt for Surrender of Passport as to Gary Winner Passport Number 309508026 issued by USA (Saucier, Martha) (Entered: 11/17/2011) |
| 11/17/2011 | | Minute Entry for proceedings held before Judge William E Smith:Change of Plea Hearing as to Gary Winner held on 11/17/2011, Plea entered by Gary Winner (1) Guilty Count 1-2,3,4. (Donavan, Haddad, Silva (pro hac vice)) Deft present and sworn. Court verifies that the deft has reviewed the charges against him with his attorney. Court questions deft and reviews the plea agreement, including maximum penalties, sentencing guidelines, and constitutional rights. Govt outlines the legal elements and facts of this case. Deft agrees with govts outline. Deft |

| | | | |
|---|---|---|---|
| | | | pleads guilty. Court accepts plea and adjudges the deft guilty. Sentencing is scheduled for Friday, 2/10/2012 at 10:00 a.m. Probation to prepare PSR. Deft released on previous conditions. Recess(Court Reporter Anne Clayton in Courtroom 2 at 3:00 p.m.) (Urizandi, Nisshy) (Entered: 11/17/2011) |
| 11/17/2011 | | 13 | CONSENT DECREE OF FORFEITURE by USA as to Gary Winner (Urizandi, Nisshy) (Entered: 11/18/2011) |
| 11/17/2011 | | 14 | PRELIMINARY ORDER OF FORFEITURE as to Gary Winner re 13 Consent Decree of Forfeiture filed by USA. So Ordered by Judge William E. Smith on 11/17/2011. (Urizandi, Nisshy) (Entered: 11/18/2011) |
| 11/17/2011 | | 15 | Summons Returned Executed on 11/17/2011 as to Gary Winner. (Urizandi, Nisshy) (Entered: 11/18/2011) |
| 11/17/2011 | | | NOTICE OF HEARING DEFENDANT REQUEST as to Gary Winner Sentencing set for **Friday, 2/10/2012 at 10:00 AM in Courtroom 2** before Judge William E. Smith.(Urizandi, Nisshy) (Entered: 11/18/2011) |
| 11/30/2011 | | 16 | MOTION to Travel by Gary Winner. (Haddad, William) (Entered: 11/30/2011) |
| 12/01/2011 | | | MOTIONS as to Gary Winner 16 MOTION to Travel referred to Magistrate Judge David L. Martin for determination. (Jackson, Ryan) (Entered: 12/01/2011) |
| 12/01/2011 | | | TEXT ORDER granting 16 Motion to Travel to Grand Beach, Michigan from 12/2/2011 to 12/4/2011 as to Gary Winner (1). So Ordered by Magistrate Judge David L. Martin on 12/1/2011.(Noel, Jeannine) (Entered: 12/01/2011) |
| 02/03/2012 | 🔒 🔒 | 17 | (Court only) FINAL Presentence Investigation Report as to Gary Winner NOTICE: To view document use CMECF Filer login first. (Attachments: # 1 Letters of Support, # 2 Addendum, # 3 Objections Defendant, # 4 Objections Government)(McLoughlin, Heather) (Entered: 02/03/2012) |
| 02/03/2012 | 🔒 🔒 | 18 | *SEALED* CONFIDENTIAL PROBATION PSI Recommendation as to Gary Winner. re 17 Final Presentence Investigation Report, Not for public disclosure per Judicial Conference Policy. (McLoughlin, |

| | | |
|---|---|---|
| | | Heather) (Entered: 02/03/2012) |
| 02/07/2012 | 19 | SENTENCING MEMORANDUM by Gary Winner (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Haddad, William) (Entered: 02/07/2012) |
| 02/09/2012 | 20 | SENTENCING MEMORANDUM by USA as to Gary Winner (Donovan, Dulce) (Entered: 02/09/2012) |
| 02/10/2012 | 21 | MOTION for Third Level Decrease *(Grant Defendant a Three Level Decrease in Offense Level for Acceptance of Responsibility)* by USA as to Gary Winner. (Donovan, Dulce) (Entered: 02/10/2012) |
| 02/10/2012 | | Minute Entry for proceedings held before Judge William E. Smith: Sentencing held on 2/10/2012 for Gary Winner (1), Count(s) 1-2, 3, 4, (Donovan, Haddad, Silva, USPO H. McLoughlin) Deft present. Court verifies that defense counsel has reviewed the PSR with the deft. Objections made to the PSR by defense counsel. Govt does not object to two of the three objections. Court sets forth the advisory sentencing guideline calculations in this case. Arguments heard on defense's objections. Court grants two of the three objections for reasons stated in open court. PSR to be modified. Court sets forth the advisory recalculated sentencing guidelines. Govt and defense counsel each give their sentencing recommendations. Deft allocutes. Deft is sentenced to a term of 37 months incarceration as to counts I, II and IV and 36 months as to count III to run concurrently; 3 years of supervised release as to counts I, II, and III and IV and 1 year as to count III to run concurrently with special conditions; $400.00 special assessment fee, $12,500.00 fine, and restitution in the amount $2,210,152.00. Court advises the deft of his appeal rights. At the request of defense counsel the court makes two recommendations to the BOP. Deft is to surrender on 2/27/2012 to the U.S. Marshal's Office or the designated facility (if one has been appointed). Recess (Court Reporter Anne Clayton in Courtroom 2 at 10:05 a.m.) (Urizandi, Nisshy) (Entered: 02/10/2012) |
| 02/17/2012 | 22 | MOTION to Extend Time *to Report* by Gary Winner. (Haddad, William) (Entered: 02/17/2012) |
| 02/17/2012 | 23 | JUDGMENT as to Gary Winner (1), Count(s) 1-2, 3, 4, |

| | | |
|---|---|---|
| | | Deft is sentenced to a term of 37 months incarceration as to counts I, II and IV and 36 months as to count III to run concurrently; 3 years of supervised release as to counts I, II, and IV and 1 year as t count III to run concurrently with special conditions; $400.00 special assessment fee, $12,500.00 fine, and restitution in the amount $2,210,152.00. So Ordered by Judge William E. Smith on 2/17/2012. (Urizandi, Nisshy) (Entered: 02/17/2012) |
| 02/21/2012 | | FOWARDED TO CHAMBERS: 22 MOTION to Extend Reporting Date as to Gary Winner (Jackson, Ryan) (Entered: 02/21/2012) |
| 02/22/2012 | 24 | MOTION for Forfeiture of Property *(Entry of Final Order of Forfeiture)* by USA as to Gary Winner. (Attachments: # 1 Affidavit, # 2 Exhibit)(Iannotti, Michael) (Entered: 02/22/2012) |
| 02/23/2012 | | TEXT ORDER GRANTING 22 MOTION to Extend Time *to Report/Surrender* up to and including 3/19/12 as to Gary Winner. So Ordered by Judge William E. Smith on 2/23/12. (Jackson, Ryan) (Entered: 02/23/2012) |
| 02/24/2012 | 25 | FINAL ORDER OF FORFEITURE as to Gary Winner. So Ordered by Judge William E. Smith on 2/24/2012. (Urizandi, Nisshy) (Entered: 02/24/2012) |
| 02/28/2012 | 🔒 | (Court only) ***Motions terminated as to Gary Winner: 24 MOTION for Forfeiture of Property *(Entry of Final Order of Forfeiture)* filed by USA. (Jackson, Ryan) (Entered: 02/28/2012) |
| 09/04/2012 | 26 | MOTION to Alter Judgment by USA as to Gary Winner. (Donovan, Dulce) (Entered: 09/04/2012) |
| 09/14/2012 | 27 | RESPONSE to Motion by Gary Winner re 26 MOTION to Alter Judgment (Haddad, William) (Entered: 09/14/2012) |
| 09/17/2012 | | Motions Forwarded to Chambers: 26 MOTION to Alter Judgment (Jackson, Ryan) (Entered: 09/17/2012) |
| 09/20/2012 | | TEXT ORDER granting 26 Motion to Alter Judgment as to Gary Winner (1). So Ordered by Judge William E. Smith on 9/20/12.(Jackson, Ryan) (Entered: 09/20/2012) |
| 09/26/2012 | 28 | AMENDED JUDGMENT as to Gary Winner (1), Count |

| | | | |
|---|---|---|---|
| | | | (s) 1-2, 3, and 4. Deft is sentenced to a term of 37 months incarceration as to counts I, II and IV and 36 months as to count III to run concurrently; 3 years of supervised release as to counts I, II, and IV and 1 year as t count III to run concurrently with special conditions; $400.00 special assessment fee, $12,500.00 fine, and restitution in the amount $2,210,152.00 ($70,358.00 joint and several with Sonja Ascoli - CR 12-12).;in the amount $2,210,152.00 ($70,358.00 joint and several with Sonja Ascoli - CR 12-12). So Ordered by Judge William E. Smith on 9/26/2012. (Urizandi, Nisshy) (Entered: 10/03/2012) |
| 12/31/2013 | 🔒 🔒 | 29 | Passport Form 40 Post Conviction as to Gary Winner. Passport Number 309508026 issued by USA and judgment forwarded to U.S. DEPARTMENT OF STATE. (Noel, Jeannine) (Entered: 12/31/2013) |
| 06/05/2014 | | 30 | Supervised Release Jurisdiction Transferred to Northern District of IL as to Gary Winner; Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (Jackson, Ryan) (Entered: 06/05/2014) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| GARY WINNER | : |

**CR11    169S**

In Violation of 18 U.S.C. § 1347,
21 U.S.C. §§ 331(a) and 333(a)(2),
and 18 U.S.C. § 1957

JUDGE DURKIN

### INFORMATION

The United States Attorney charges:

FILED

SEP 29 2011

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

### INTRODUCTION

At all times relevant to this Information:

MAGISTRATE JUDGE COLE

1.       Defendant GARY WINNER was a resident of the State of Illinois and the

President of Planned Eldercare, Inc. (PE).

2.       Planned Eldercare was an Illinois corporation which was a nationwide supplier of

durable medical equipment (DME).  Planned Eldercare's principal place of business was

330 Lexington Drive, Buffalo Grove, Illinois.

### A.   THE MEDICARE PROGRAM

### 1. The Medicare Program Generally

3.       Medicare is a federal health insurance program covering people aged 65 and

older, as well as persons under age 65 who are blind or disabled.  The Medicare program is a

health care benefit program, as that term is defined in 18 U.S.C. § 24 and as that term is used in

18 U.S.C. § 1347.   Medicare is administered by the Centers for Medicare and Medicaid

Services (CMS).

Attest to
True Copy

DAVID A. DIMARZIO

By

Deputy Clerk

4.      The Medicare program includes a voluntary supplemental insurance benefit known as "Part B," which is funded from insurance premiums paid by enrolled Medicare beneficiaries, and from contributions from the federal treasury.  Part B covers various outpatient items and services, including durable medical equipment (DME) and other medical supplies.

5.      CMS contracts with private insurance organizations, referred to as "carriers" under Part B, to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers.  These carriers are required to administer the Medicare program according to regulations established by CMS.  There are four regional carriers, known as Durable Medical Equipment Medicare Administrative Contractors (DME MACs), who are responsible for processing claims for DME reimbursement.

6.      The Part B program requires that beneficiaries bear some of the costs of their care. In general, Medicare covers 80 percent of the reasonable charges for services and equipment. Medicare beneficiaries or any supplemental insurance carriers are responsible for the remaining 20 percent.  This remaining 20 percent is typically referred to as the beneficiaries' "copayment" amount.

7.      This copayment amount is billed by the provider to the beneficiary.

8.      Medicare prohibits the waiver of copayments by providers, practitioners, or suppliers because it results in:  a) false claims; b) violations of the anti-kickback statute, 18 U.S.C. § 1320a-7b; and c) excessive utilization of items and services paid for by Medicare.  The waiving of copayments means beneficiaries are less likely to complain about receiving products they did not order and it enables providers, practitioners and suppliers to bill Medicare for items the beneficiary did not receive but which were billed to Medicare on his or her behalf.

2

## 2. Prohibited Telemarketing

9.      Section 1834(a)(17)(B) of the Social Security Act, 42 U.S.C. § 1395m(a)(17),

prohibits suppliers of DME from making unsolicited telephone calls to Medicare beneficiaries in

an attempt to sell them items covered by Medicare Part B, except in three specific situations: (I)

the beneficiary has given written permission to the supplier to make contact by telephone; (ii) the

contact is regarding a covered item the supplier has already furnished the beneficiary; or (iii) the

supplier has furnished at least one covered item to the beneficiary during the preceding fifteen

months.

10.      Section 1834(a)(17)(B) of the Social Security Act, 42 U.S.C. § 1395m(a)(17)(B),

specifically prohibits payment to a supplier who knowingly submits a claim generated pursuant

to a prohibited telephone solicitation.

## 3. Medicare Coverage for DME

11.      For any item to be covered by Medicare as DME, it must be reasonable and medically

necessary for the diagnosis or treatment of illness or injury or improve the function of a malformed

body part.  In addition, it must be used in the patient's home and must meet the definition of DME.

12.      Durable medical equipment is defined as equipment that: (a) can withstand repeated

use; (b) is primarily and customarily used to serve a medical purpose; (c) generally is not useful to

a person in the absence of an illness or injury; and (d) is appropriate for use in the home.  All

requirements of the definition must be met before an item can be considered DME.

13.      For an item to be covered by Medicare Part B, a written, signed, and dated physician's

order and information from the treating physician concerning the patient's diagnosis demonstrating

the medical necessity of the DME item must be received by the provider/supplier before a claim is

3

submitted to the DME MAC.  Typically, the prescriptions submitted to beneficiaries' physicians,

include, among other things, boxes for the physicians to check affirming that the patient had certain

diagnoses.  If the supplier bills for an item without first receiving the completed order or sufficient

information that coverage criteria for an item has been met, the item is not covered by Medicare Part

B.  For certain DME suppliers, the physician's written order must be received by the supplier prior

to delivery of the item.

      14.     The Centers for Medicare and Medicaid Services assigns billing codes to medical

products and services to be used by suppliers and medical providers when billing Medicare Part B.

These codes are contained in the Healthcare Common Procedure Coding System and are commonly

referred to as "HCPCS" codes.  Each HCPCS code is assigned an allowable charge on a state-by-

state basis.  The allowable charges are published in a fee schedule.

      15.     To obtain reimbursement from Medicare under Part B, DME providers like PE submit

claims to the regional Medicare carriers on a standardized form, commonly referred to as a CMS-

1500 form.  These claim forms can be submitted manually or electronically.  When submitting

claims, the DME provider must state, among other things, the HCPCS code or codes applicable to

the product or service provided and the name of the physician who prescribed or ordered the

particular service.

      16.     Typically, in the case of PE, the prescriptions submitted to beneficiaries' physicians,

included, among other things, boxes for the physicians to check affirming that the patient had certain

diagnoses, such as diabetes and/or arthritis.  These boxes are known as the ICD-9 code boxes.  The

DME products sold by PE typically required a physician's diagnosis of either diabetes or arthritis

to obtain Medicare reimbursement.  The beneficiary's physician is required to complete the

physician's prescription form.  The physician order forms used by PE typically also contained a section entitled "Patient Requested the Following Products."

### 4.   Vacuum Erection Devices

17.    Under certain circumstance, the Medicare program covers reimbursement for products referred to as Vacuum Erection Devices (VEDs), for the treatment of organic impotence and/or erectile dysfunction.  Medicare regulations require VEDs to be medically necessary and prescribed by a physician.

## B.  THE FOOD DRUG AND COSMETIC ACT

18.    The Food Drug and Cosmetic Act , 21 U.S.C. §§ 301, et seq., (FDCA) defines "interstate commerce" as (1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any territory not organized by a legislative body.  The FDCA requires producers of drugs and medical devices to register with the FDA.  New producers, upon first manufacturing, preparing, propagating, compounding, and processing drugs and medical devices, must immediately register their name and place of business with the FDA.

### 1.  Medical Devices

19.    Under the FDCA, a "device" includes an instrument, apparatus, implant, machine or other similar or related article, which is intended for use in the treatment and prevention of disease in man, which does not achieve its primary intended purpose through chemical action within and on the body of man and which is not dependent upon being metabolized for the achievement of its primary intended purpose.

20.    All medical devices marketed in interstate commerce in the United States fall into

one of three regulatory classes under the FDCA: Class I, which are medical devices subject to the

least stringent regulatory requirements under the FDCA; Class II, which are subject to an

intermediate level of regulatory requirements; and Class III, which are medical devices subject to

the most stringent regulatory requirements. The classification assigned to each medical device is

determined by the degree of regulatory control necessary to provide reasonable assurance of the

safety and effectiveness of that device for its intended use.

21.     Any device that was not in commercial distribution prior to May 28, 1976 is

initially classified as a Class III device unless it is shown to be substantially equivalent to a

device marketed prior to May 28, 1976. 21 U.S.C. § 360c(f)(1). Class III medical devices

cannot be legally marketed in the United States until the manufacturer submits to the FDA a Pre-

Market Approval Application and the FDA approves the application. 21 U.S.C. § 360e(a)(2).

22.     A Class III medical devices is adulterated if it is required to have an approved Pre-

market Approval Application and does not have one in effect.

23.     A medical device of any class is misbranded if it was manufactured, prepared,

propagated, compounded, or processed in an establishment in any State not duly registered under

Title 21, United States Code, Section 360. 21 U.S.C. § 352(o).

24.     The introduction or delivery for introduction into interstate commerce of any

adulterated or misbranded medical device and the causing thereof violates the FDCA. 21 U.S.C.

§ 331(a).

## 2.  **External Penile Rigidity Devices**

25.     Pursuant to FDA regulations, external penile rigidity devices are those devices

intended to create or maintain sufficient penile rigidity for sexual intercourse.

26.     The FDA has classified external penile rigidity devices as Class II medical devices, thus exempting the devices from the Pre-Market Notification requirements of the FDCA.  Thus, manufacturers of penile rigidity devices who follow certain recommendations or guidance by the FDA to address certain risks associated with the distribution of such devices prior to introducing their device into commercial distribution in the United States are able to market their device without being subject to the Pre-Market Notification requirements contained in the FDCA.

27.     The FDA's exemption of penile rigidity devices from the Pre-Market Approval Notification requirements contained in the FDCA does not include intended uses such as treating erectile dysfunction or impotence.  Thus, the marketing of a penile rigidity device for a new intended use such as treating erectile dysfunction or impotence takes that device out from the FDA's exemption for Pre-Market Notification and subjects the device to Class III controls, such as Pre-Market Approval.

## Count I

## (Health Care Fraud)

28.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

### B.  SCHEME AND ARTIFICE TO DEFRAUD

29.     Beginning in 2005 and continuing until in or about December 31, 2008, in the District of Rhode Island, and elsewhere, defendant GARY WINNER knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property from a health care benefit program, by improperly submitting claims for reimbursement to Medicare that falsely and fraudulently represented the medical necessity of DME being ordered on behalf of

7

beneficiaries.

## C. MANNER AND MEANS

### 1. Prohibited Telemarketing

30.     It was part of the scheme and artifice to defraud that defendant GARY WINNER

regularly purchased telemarketing leads specifically for English-speaking, non-Hispanic,

diabetics over the age of 65.  Purchasing telemarketing leads for individuals over the age of 65

ensured that defendant GARY WINNER would obtain the telephone contact information for

thousands of Medicare beneficiaries.

31.     It was further part of the scheme and artifice to defraud that defendant GARY

WINNER, using the telemarketing leads he purchased, instructed PE employees to cold call

individuals, including Medicare beneficiaries, in order to sell them DME.  At times, defendant

GARY WINNER employed 10 telemarketers per day.

### 2. "At No Cost to You" Sales Approach

32.     It was further part of the scheme and artifice to defraud that defendant GARY

WINNER instructed PE employees, upon successfully reaching an individual on the phone as a

result of a telemarketing call, to inquire if they suffered from diabetes or arthritis.  In instructing

his employees to  inquire if the call recipients suffered from diabetes or arthritis, defendant

GARY WINNER knew that the individuals being called likely suffered from diabetes because he

had specifically included diabetes as one of the criteria for the telemarketing lead he purchased.

In addition, defendant GARY WINNER knew that a majority of individuals over the age of 65

suffer from some form of arthritis.

33.     It was further part of the scheme and artifice to defraud that once call recipients

8

identified themselves as suffering from either diabetes or arthritis, as an inducement for call recipients to provide their Medicare and physician information, defendant GARY WINNER instructed PE employees to next inform the call recipients that PE could provide them with products to help with their ailments "at no cost to you."

34.    It was further part of the scheme and artifice to defraud that after explaining that PE could provide products "at no cost to you" and obtaining call recipients' Medicare and physician information, defendant GARY WINNER instructed PE employees to recommend products that could help beneficiaries with their ailments.

### 3. · Billing Medicare for DME Not Ordered or Medically Necessary

35.    It was further part of the scheme and artifice to defraud that once PE employees obtained Medicare beneficiaries' agreement to receive certain products, defendant GARY WINNER instructed PE employees to order as many DME products as possible for those beneficiaries without regard to whether beneficiaries actually requested the products or had a medical need for the equipment.  In practice, this business policy resulted in PE billing Medicare for thousands of DME products that beneficiaries did not order.

36.    It was further part of the scheme and artifice to defraud that defendant GARY WINNER would direct the PE sales force to send beneficiaries "packages" of arthritic supplies regardless of medical necessity, once securing beneficiaries' agreements to receive, or orders for, one piece of DME.   Upon being confronted by PE employees who questioned the practice of ordering DME that beneficiaries did not order, defendant GARY WINNER typically responded by saying that "it doesn't cost the client anything as the government is paying for it, and that the government would just print more money, so order more."

37.     It was further part of the scheme and artifice to defraud that defendant GARY

WINNER responded to beneficiaries who received items that they did not order by stating "If you

don't need them, put them under the sink."

#### 4.     Waiver of Medicare Copayments

38.     It was further part of the scheme and artifice to defraud that defendant GARY

WINNER waived copayments for all Medicare patients despite being aware that waiving

copayments was prohibited by Medicare.  By waiving copayments they otherwise would be

responsible for, WINNER induced beneficiaries to accept products they had not ordered and not

report WINNER's fraudulent billing to Medicare.

39.     It was further part of the scheme and artifice to defraud that defendant GARY

WINNER instructed his employees to tell beneficiaries that they should ignore their Medicare

explanation of benefits form because PE forgave any "remainder of cost."

#### 5.     Vacuum Erection Device

40.     It was further part of the scheme and artifice to defraud that one of the products

about which defendant GARY WINNER instructed his employees to inform male diabetic

beneficiaries was an "erectile pump."  Defendant GARY WINNER instructed his employees to

falsely inform male diabetic Medicare beneficiaries that the pump "was good for prostate

problems" and was "designed to help blood circulation exclusively in males."

41.     It was further part of the scheme and artifice to defraud that the erectile pumps

that defendant GARY WINNER provided male diabetic beneficiaries were in fact penis enlargers

sold under various names such as  "The Commando," "the Ramrod," and "the Fireman's Penis

Pump" that WINNER had purchased from online stores which sold adult sexual products.

42.     It was further part of the scheme and artifice to defraud that upon receiving the penis enlargers from the online sex shops, defendant GARY WINNER instructed his employees to remove the devices from the original boxes which were labeled "penis enlarger," repackage the items in a clear plastic bag, and insert an information sheet which included false medical claims about the item, such as "[c]areful regular use of the pump increases blood flow in the urinary tract and prostate region. The pump also helps with bladder control; urinary flow and prostate comfort . . . ."

43.     It was further part of the scheme and artifice to defraud that defendant GARY WINNER billed Medicare for the penis enlargers sold to male beneficiaries and  represented that the enlargers were medical devices, i.e. VEDs, designed to treat erectile dysfunction. In fact, as defendant GARY WINNER knew that the penis enlargers that he sold to Medicare beneficiaries and for which he billed Medicare served no medical purpose.

44.     It was further part of the scheme to defraud that WINNER purchased the penis enlargers for an average price of $26.00 per item and received, on average, $284 per item in reimbursement from Medicare.

### D. **EXECUTION OF THE SCHEME**

45.     Beginning in 2006 and continuing until in or about December 31, 2008, in the District of Rhode Island, and elsewhere, defendant GARY WINNER knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property from a health care benefit program, by improperly submitting claims for reimbursement to Medicare for arthritic packages that falsely and fraudulently represented that beneficiaries and their physicians

11

had ordered all items within those packages and that the items were medically necessary DME, from which PE received $1,839,847.

All in violation of Title 18, United States Code, Section 1347.

## Count 2

### (Health Care Fraud)

46.     Paragraphs 1 through 44 of this Information are incorporated by reference as if fully restated herein.

47.     Beginning in 2005 and continuing until in or about July 31, 2009, in the District of Rhode Island, and elsewhere, defendant GARY WINNER knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property from a health care benefit program, by improperly submitting claims for reimbursement to Medicare that falsely and fraudulently represented that beneficiaries were receiving VEDs and that the VEDs were medically necessary DME, from which PE received $370,305

All in violation of Title 18, United States Code, Section 1347.

## Count 3

### (Introduction of Adulterated and Misbranded Medical
### Device Into Interstate Commerce)

48.     Paragraphs 1 through 45 of this Information are incorporated by reference as if fully restated herein.

49.     The penis enlargers that defendant GARY WINNER marketed and distributed constitute "devices" within the meaning of the FDCA.

12

50.     The penis enlargers that defendant GARY WINNER marketed and distributed had not been reviewed or approved by the FDA for any intended use.

51.     Neither defendant GARY WINNER nor PE were registered with the FDA in any capacity as producers, manufacturers, preparers, propogators, compounders, or processors of medical devices.

52.     On or about December 26, 2007, in the District of Rhode Island and elsewhere, defendant GARY WINNER with the intent to defraud and mislead, introduced, delivered for introduction, and caused to be introduced and delivered for introduction into interstate commerce, namely from Illinois to Rhode Island, an adulterated and misbranded medical device, namely a penis enlarger, a Class III medical device not approved by the FDA.

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

### Count 4

### (Money Laundering)

53.     Paragraphs 46 and 47 of this Information are incorporated by reference as if fully restated herein.

54.     On or about May 4, 2007, in the District of Rhode Island and elsewhere, the defendant, GARY WINNER, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, to wit a transfer of $50,000, which was derived from specified unlawful activity, health care fraud, in violation of 18 U.S.C. §1347.

All in violation of Title 18, United States Code, Section 1957.

13

## FORFEITURE ALLEGATION

(Health Care Fraud)

55.     Paragraphs 1 through 52 of this Information are incorporated by reference as if fully restated herein.

56.     Pursuant to 18 U.S.C. § 982(a)(7), the defendant, GARY WINNER, shall forfeit to the United States, any and all right, title, and interest in any and all property constituting or derived from any proceeds the defendant obtained, directly or indirectly, as a result of the Federal health care offenses alleged in Counts One and Two of this Indictment, which allege that the defendant submitted false claims for reimbursement to the Medicare Program in violation of 18 U.S.C. § 1347, and any and all property traceable to such property, including and limited to the following accounts up to the amount of $2,210,152:

Account number 88048312934 in the name of Paige Enterprises, LLC located at Vanguard Group, 400 Devon Park Drive, Wayne, PA 19087; and

Account number 915-028991 in the name of Paige Enterprises, LLC located at TD Ameritrade, 4211 South 102nd Street, Omaha, Nebraska 68127.


PETER F. NERONHA
United States Attorney

By:

DULCE DONOVAN
Assistant U.S. Attorney

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney
Chief, Criminal Division

Date:       9/28/11

14

**DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT**

BY: [X] INFORMATION [ ] INDICTMENT [ ] COMPLAINT    CASE NO.

Matter Sealed: [ ] Juvenile  [ ] Other than Juvenile

[ ] Pre-Indictment Plea  [ ] Superseding  [ ] Defendant Added
                          [ ] Indictment   [ ] Charges/Counts Added
                          [ ] Information

**Name of District Court, and/or Judge/Magistrate Location (City)**

UNITED STATES DISTRICT COURT    RHODE ISLAND
DISTRICT OF                     Divisional Office

Name and Office of Person        PETER F. NERONHA
Furnishing Information on    [X] U.S. Atty  [ ] Other U.S. Agency
THIS FORM                   Phone No.

Name of Asst.        DULCE DONOVAN
U.S. Attorney
(if assigned)

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
DEPARTMENT OF HEALTH & HUMAN SERVICES

[ ] person is awaiting trial in another Federal or State Court
    (give name of court)

[ ] this person/proceeding transferred from another district
    per (circle one) FRCrP 20, 21 or 40. Show District

[ ] this is a reprosecution of charges
    previously dismissed which were
    dismissed on motion of:
    [ ] U.S. Atty [ ] Defense                SHOW
[ ] this prosecution relates to a          DOCKET NO.
    pending case involving this same
    defendant. (Notice of Related
    Case must still be filed with the
    Clerk.)
[ ] prior proceedings or appearance(s)      MAG. JUDGE
    before U.S. Magistrate Judge            CASE NO.
    regarding this defendant were
    recorded under

Place of   RHODE ISLAND           County
offense

---

USA vs.

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

SEP 29 2011

Defendant:  GARY WINNER

Address:

[ ]              **REDACTED**

Birth                                        Alien
Date                                         (if applicable)

Social

Issue: [ ] Warrant  [X] Summons

Location Status:

Arrest Date _____ or Date Transferred to Federal Custody _____

[ ] Currently in Federal Custody
[ ] Currently in State Custody
    [ ] Writ Required
[ ] Currently on bond
[ ] Fugitive

Defense Counsel (if any):  WILLIAM H. KETTELWELL

[ ] FPD  [ ] CJA  [ ] RET'D

[ ] Appointed on Target Letter

[ ] This report amends AO 257 previously submitted

---

**OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS**

Total # of Counts 4

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Felony/Misd. |
|-----|------------------------------|-------------------------------|--------------|
|     | SEE ATTACHMENT               |                               | [X] Felony [ ] Misdemeanor |
|     |                              |                               | [ ] Felony [ ] Misdemeanor |
|     |                              |                               | [ ] Felony [ ] Misdemeanor |
|     |                              |                               | [ ] Felony [ ] Misdemeanor |
|     |                              | Estimated Trial Days: 5       | [ ] Felony [ ] Misdemeanor |

ATTACHMENT TO DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION
IN U.S. DISTRICT COURT


DEFENDANT GARY WINNER

COUNTS 1 and 2: 18 U.S.C. § 1347 - Health Care Fraud
Maximum Penalties for each Count: 10 years imprisonment; a fine of $250,000; a term of
supervised release of 3 years; and a mandatory special assessment of $100.

COUNT 3: 21 U.S.C. §§ 331(a) and 333(a)(2) - Introduction of Adulterated and Misbranded
Medical Device Into Interstate Commerce
Maximum Penalties: 3 years imprisonment; a fine of $10,000; a term of supervised release of one
year; and a mandatory special assessment of $100.

COUNT 4: 18 U.S.C. § 1957 - Money Laundering
Maximum Penalties: 10 years imprisonment; a fine of $250,000; a term of supervised release of
3 years; and a mandatory special assessment of $100.

FORFEITURE ALLEGATION: 18 U.S.C. § 982(a)(7)

FILED

SEP 29 2011

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA          :

      v.          :          **CR**11     **169S**

GARY WINNER          :

14cr235-1
JUDGE DURKIN

### PLEA  AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the United States

and Defendant, GARY WINNER, have reached the following agreement:

MAGISTRATE JUDGE COLE

    1.          Defendant's Obligations.

        a. Defendant will waive presentation of this matter to a grand jury and consent to

the filing of a five-count Information which charges defendant with two counts of health care

fraud, in violation of 18 U.S.C. § 1347, one count of the introduction of an adulterated and

misbranded medical device into interstate commerce, in violation of 21 U.S.C. §§ 331(a) and

333(a)(2), one count of money laundering, in violation of 18 U.S.C.  § 1957, and one criminal

forfeiture count, pursuant to 18 U.S.C. § 982(a)(7).  Defendant agrees that Defendant will plead

guilty to said Information. Defendant further agrees that the time between the filing of this plea

agreement and the scheduled date for the change of plea is excludable under the Speedy Trial Act,

18 U.S.C. § 3161.

        b. Defendant further agrees:

           (i) to forfeit all interests in the following specified property up to the amount of


Attest to
True Copy
DAVID A. DIMARZIO
By_____ Deputy Clerk

$2,210,152, which is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of Defendant's health care fraud offenses listed in Counts 1 and 2 of the Information:

> Account number 88048312934 in the name of Paige Enterprises, LLC located at Vanguard Group, 400 Devon Park Drive, Wayne, PA 19087; and

> Account number 915-028991 in the name of Paige Enterprises, LLC located at TD Ameritrade, 4211 South 102nd Street, Omaha, Nebraska 68127.

(ii) Defendant warrants that Defendant is the sole owner of all of the property listed above, and agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

(ii) to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

(iv) to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct.

2.      Government's Obligations. In exchange for Defendant's plea of guilty:

2

         a. The government will recommend that the Court impose a term of imprisonment at the low end of the range of sentences for the offense level determined by the Court under the United States Sentencing Guidelines (the U.S.S.G. or "guidelines").

         b. For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

         c. As of the date of this agreement, Defendant has timely notified authorities of an intention to enter a plea of guilty. If the offense level is 16 or greater and Defendant enters a plea of guilty pursuant to this agreement, the government will move the sentencing Court for an additional decrease of one level, pursuant to U.S.S.G. § 3E1.1(b)(2), unless Defendant indicates an intention not to enter a plea of guilty, thereby requiring the government to prepare for trial.

         d. The government is free to recommend any combination of supervised release, fines, and restitution which it deems appropriate.

    3.    Defendant understands that the guidelines are not binding on the Court, and that, although the Court must consult the guidelines in fashioning any sentence in this case, the guidelines are only advisory, and the Court may impose any reasonable sentence in this matter up to the statutory maximum penalties after taking into account the factors enumerated in 18 U.S.C. § 3553(a).

    4.    The United States and defendant stipulate and agree to the following facts under the guidelines:

3

a.    The intended loss amount pursuant to Guideline section 2B1.1(b)(1) is between $1 million and $2.5 million.

5.    Except as expressly provided in the preceding paragraph, there is no agreement as to which Offense Level and Criminal History Category applies in this case. Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guidelines calculation.

6.    The maximum statutory penalties for the offense to which defendant is pleading are:

### Counts 1 and 2

Each count 10 years imprisonment, a fine of $250,000, a term of supervised release of 3 years; and a mandatory special assessment of $100.

### Count 3

3 years imprisonment, a fine of $10,000, a term of supervised release of 1 year, and a mandatory special assessment of $100.

### Count 4

10 years imprisonment, a fine of $250,000, a term of supervised release of 3 years, and a mandatory special assessment of $100.

Thus, the total combined maximum statutory penalties for the offenses to which defendant is pleading guilty are: 33 years imprisonment, a fine of $760,000, a term of supervised release of 3 years, and a mandatory special assessment of $400.

7.    Defendant agrees that, after Defendant and Defendant's counsel sign this agreement, counsel will return it to the United States Attorney's Office along with a money order

4

or certified check, payable to the Clerk, United States District Court, in payment of the special assessments. Failure to do so, unless the Court has made a previous finding of indigence, will relieve the government of its obligation to recommend a reduction in the offense level under the guidelines for acceptance of responsibility.

8.    Defendant is advised and understands that:

a. The government has the right, in a prosecution for perjury or making a false statement, to use against Defendant any statement that Defendant gives under oath;

b. Defendant has the right to plead not guilty, or having already so pleaded, to persist in that plea;

c. Defendant has the right to a jury trial;

d. Defendant has the right to be represented by counsel – and if necessary have the Court appoint counsel – at trial and every other stage of the proceeding;

e. Defendant has the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

f. Defendant waives these trial rights if the Court accepts a plea of guilty.

9.    The government reserves its full right of allocution, including the right to present any information to the Court for its consideration in fashioning an appropriate sentence, the right to correct misstatements, misrepresentations, or omissions by Defendant, and to answer any questions asked by the Court.

10.    Except for paragraph 2 and 4 above, the parties have made no agreement concerning the application of the guidelines in this case.

11.     Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed. The Court is not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations. The Court is free to impose any sentence it deems appropriate up to and including the statutory maximum. Defendant also understands that even if the Court's guideline determinations and sentence are different than Defendant expects, Defendant will not be allowed to withdraw Defendant's plea of guilty.

12.     Defendant hereby waives Defendant's right to appeal the conviction and sentence imposed by the Court, if the sentence imposed by the Court is within or below the sentencing guideline range determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

13.     This agreement is binding on the government only if Defendant pleads guilty, fulfills all Defendant's obligations under the agreement, does not engage in any conduct constituting obstruction of justice under § 3C1.1 of the guidelines, and does not commit any new offenses. Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate. If that occurs, Defendant shall not have the right to withdraw Defendant's guilty plea.

14.     This agreement is limited to the District of Rhode Island and does not bind any other federal, state, or local prosecutive authorities.

15.     This agreement constitutes the entire agreement between the parties. No other

6

promises or inducements have been made concerning the plea in this case. Defendant acknowledges that no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement. Any additions, deletions, or modifications to this agreement must be made in writing and signed by all the parties in order to be effective.

16.     Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's knowledge and belief, Defendant understands the agreement.

17.     Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions.


GARY WINNER
Defendant

9/27/11
Date

WILLIAM H. KETTELWELL.
Counsel for Defendant

9/23/11
Date

DULCE DONOVAN
Assistant U.S. Attorney

9/28/11
Date

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney
Chief, Criminal Division

09/28/2011
Date

7

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**GARY WINNER** | **AMENDED JUDGMENT IN A CRIMINAL CASE** |

Case Number: 1:11CR00169-01S
USM Number: 08545-070

1 cr 235-1

William A. Haddad, Esq. & Sara E. Silva, Esq.
Defendant's Attorney

**Date of Original Judgment:** February 17, 2012
(Or Date of Last Amended Judgment)

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or
☐ 18 U.S.C. § 3559(c)(7)

☑ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

☑ pleaded guilty to count(s)  I, II, III, and IV of the Information

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

JUDGE DURKIN

MAGISTRATE JUDGE COLE

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | See Next Page | | |

The defendant is sentenced as provided in pages 2 through ___9___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 10, 2012
Date of Imposition of Judgment

_WSmm_
Signature of Judge

William E. Smith
US District Judge
Name and Title of Judge

9/26/12
Date

Attest to
True Copy
DAVID A. DIMARZIO
By _____ Deputy Clerk

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case                                    (NOTE: Identify Changes with Asterisks (*))
           Sheet 1A

DEFENDANT: **GARY WINNER**                                     Judgment—Page __2__ of __9__
CASE NUMBER: **1:11CR00169-01S**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1347 | Health Care Fraud | December 31, 2008 | I |
| 18 U.S.C. § 1347 | Health Care Fraud | July 31, 2009 | II |
| 21 U.S.C. § 331(a) and 333 (a)(2) | Introduction of Adulterated and Misbranded Medical Device Into Interstate Commerce | December 26, 2007 | III |
| 18 U.S.C. § 1957 | Money Laundering | May 4, 2007 | IV |

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case        (NOTE:  Identify Changes with Asterisks (*))
         Sheet 2 — Imprisonment

DEFENDANT:  **GARY WINNER**
CASE NUMBER:  **1:11CR00169-01S**

Judgment — Page    3    of    9

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**37 months;  37 months as to counts I, II, and IV and 36 months as to count III all counts to run concurrently with each other.**

☑ The court makes the following recommendations to the Bureau of Prisons:

**1. The defendant shall participated in the drug residential treatment program.**
**2. The defendant shall be placed in the Lompoc Federal Correctional Camp.**

☐ The defendant is remanded to the custody of the United States Marshal.

☑ The defendant shall surrender to the United States Marshal for this district:

     ☐ at    12:00        ☐ a.m.    ☑ p.m.    on    2/27/2012        .

     ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☑ before 2 p.m. on    2/27/2012        .

     ☐ as notified by the United States Marshal.

     ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
                UNITED STATES MARSHAL

By _____
                DEPUTY UNITED STATES MARSHAL

AO 245C   (Rev. 06/05) Amended Judgment in a Criminal Case                                    (NOTE: Identify Changes with Asterisks (*))
Sheet 3 — Supervised Release

DEFENDANT: **GARY WINNER**                                     Judgment—Page ___4___ of ___9___
CASE NUMBER: **1:11CR00169-01S**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**3 years as to counts I, II, and IV and 1 year as to count III all counts to run concurrently with each other.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑   The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

---

### FOR OFFICIAL USE ONLY - US PROBATION OFFICE

---

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or (3) modify the conditions of supervision.
These conditions have been read to me. I fully understand them and have been provided a copy.

(Signed)

_____          _____
Defendant                                                                            Date

_____          _____
US Probation Officer/Designated Witness                                Date

DEFENDANT: **GARY WINNER**
CASE NUMBER: **1:11CR00169-01S**

Judgment—Page ___5___ of ___9___

# SPECIAL CONDITIONS OF SUPERVISION

In addition, the defendant shall comply with the following special condition(s):

1. The defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation office.

2. The defendant shall participate in and satisfactorily complete a program approved by the United States Probation Office for inpatient or outpatient treatment of narcotic addiction or drug or alcohol dependency which will include testing (up to 72 tests per year) for the detection of substance use or abuse. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.

DEFENDANT: **GARY WINNER**

Judgment — Page ___6___ of ___9___

CASE NUMBER: **1:11CR00169-01S**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 400.00 | $ 12,500.00 | $ 2,210,152.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☑ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| The Centers of Medicare and Medicaid<br>Attn: Dennis J. Czulewicz<br>Office of Financial Managment<br>Accounting Management Group | $2,210,152.00 | $2,210,152.00 | |
| Division of Accounting Operations<br>P.O. Box 7520<br>Baltimore, MD 21207-0520 | | | |
| **TOTALS** | $    2,210,152.00 | $    2,210,152.00 | |

☐ If applicable, Restitution amount ordered pursuant to plea agreement   $ _____

☐ The defendant shall pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the   ☑ fine   ☑ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  **GARY WINNER**
CASE NUMBER:  **1:11CR00169-01S**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $  2,223,052.00    due immediately.

☐  not later than _____ , or
☐  in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with    ☐ C,      ☐ D, or    ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or ·

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑  Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

**The joint and several liability amounts for all co-defendants listed on the next page are effective upon entry of judgment in their individual cases. Those amounts may be changed by the Court. The final judgment for each co-defendant reflects the amount of that co-defendant's liability.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:

Pursuant to 18 U.S.C. § 982(a)(7), the defendant shall forfeit to the United States, any and all right, title, and interest in any and all property constituting or derived from any proceeds the defendant obtained, directly or indirectly, as a result of the Federal health care offenses alleged in counts One and Two of the Information, which alleges that the defendant

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

DEFENDANT:  **GARY WINNER**
CASE NUMBER:  **1:11CR00169-01S**

## ADDITIONAL DEFENDANTS AND CO-DEFENDANTS HELD JOINT AND SEVERAL

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| 1:11CR00169-01S  Gary Winner | $2,210,152.00 | $70,358.00 | |
| 1:12CR00012-01S  Sonja Ascoli | $70,358.00 | $70,358.00 | |

AO 245C   (Rev. 09/08) Amended Judgment in a Criminal Case (NOTE: Identify Changes with Asterisks (*))
          Sheet 6B — Schedule of Payments

DEFENDANT: **GARY WINNER**                                    Judgment—Page ___9___ of ___9___
CASE NUMBER: **1:11CR00169-01S**

## ADDITIONAL FORFEITED PROPERTY

submitted false claims for reimbursement to the Medicare Program in violation of 18 U.S.C. § 1347, and any and all property traceable to such property, including and limited to the following accounts up to the amount of $2,210,152.00:

1. Account number 88048312934 in the name of Paige Enterprises, LLC located at Vanguard Group, 400 Devon Park Drive, Wayne, PA 19087; and

2. Account number 915-028991 in the name of Paige Enterprises, LLC located at TD Ameritrade, 4211 South 102nd Street, Omaha, Nebraska 68127.